LANE (UNITED STATES v.). See Case No. 15,559.

LANE, The ROBERT L. See Case No. 11,892.

## Case No. 8,055.

### In re LANER.

[9 N. B. R. 494.][1]

District Court, N. D. Ohio. 1873.

BANKRUPTCY—STOPPING PAYMENT OF COMMERCIAL PAPER—FOURTEEN DAYS' STOPPAGE—ASSIGNMENT IN MEANTIME.

A merchant who stops the payment of his commercial paper cannot prevent the running of the fourteen days, necessary to make this stoppage an act of bankruptcy, by the execution of an assignment for the benefit of all his creditors, previous to the expiration of said period.

[Cited in Riley v. Carter (Md.) 25 Atl. 673.]

In bankruptcy.

WELKER, District Judge. This petition was filed by Wellington, Brothers & Co. on the 29th day of October, 1873. The acts of bankruptcy alleged are: First, being a merchant, the suspension of his commercial paper on the 13th day of September, 1873, and not resuming the same within a period of fourteen days; second, that on the 13th day of September, 1873, being a merchant and trader, he fraudulently stopped payment of his commercial paper and had not paid the same within a period of fourteen days thereafter, nor at any time since the said stoppage.

The said P. Laner answers: First. Denying the acts of bankruptcy set forth in the petition. Second. That on the 23d day of September, 1873, he made an assignment of all his property and effects to one S. P. Jenkins for the benefit of the creditors of him, the said P. Laner, and that the said property and effects are being administered by said assignee under and in pursuance of the statutes of the state of Ohio, and for the benefit of said creditors.

This issue is submitted to the court. There appears to be no evidence to show that the debtor fraudulently stopped payment, and the question arises on the charge of the suspension of commercial paper for fourteen days. It is admitted that Mr. Laner was a merchant and trader on the 13th day of September, 1873, and that he neglected and refused, on that day, to pay his commercial paper, being the note of the

petitioning creditors, and continued that suspension until the 23d of September, 1873, when the assignment set out on the second answer was made. There was no evidence showing the payment of the commercial paper by the debtor at any time before the expiration of fourteen days, from the time of suspension.

It is claimed by the debtor that this suspension of his commercial paper, so far as the bankrupt law [of 1867 (14 Stat. 517)] is concerned, ceased at the time of the assignment of his property, under the state law, for the benefit of his creditors, and that was done before the fourteen days' suspension was complete. If, on the 23d day of September, the debtor had paid his commercial paper to the petitioning creditors, that would, of course, have stopped the suspension. Was the assignment then made tantamount to the payment of the paper? The assignment to an assignee for all the creditors of the debtor's property did not then pay the note of these creditors. This can hardly be claimed. It did not then operate as such payment. If not paid then the suspension continued, and when the fourteen days had expired it made a complete act of bankruptcy.

It has been held, in Re Ess [Case No. 4,530], "that if a merchant or trader suspends payment of his commercial paper for fourteen days, that is an act of bankruptcy of which any creditor may avail himself. The act of suspension raises a presumption of insolvency, and makes the party guilty thereof a proper subject for proceedings in bankruptcy. It is not enough that the debtor shall pay his suspended paper alone. He must pay or settle all his debts and satisfy all his creditors if he would wipe out the offense against his commercial standing committed by the suspension." The fourteen days' suspension having expired before the petition in this case was filed, and continued until the filing on the 29th day of October, 1873, authorizes this court, for that act, to adjudge him a bankrupt.

Another question presented by the answer is: Whether the state court, under the assignment of the 23d September, having obtained jurisdiction of the property and assets, and the administration of the debtor's estate, does prevent the bankrupt court from proceeding under the bankrupt law, no fraud having been shown in the assignment. If that were so, then debtors, by such assignments, could entirely defeat the operation of the bankrupt law. I do not think that the assignment interferes with the adjudication here, or constitutes a defense to these proceedings.

It may be a question, which I do not now undertake to settle, whether it is best for the creditors to compel the assignee under the state law to deliver over to the assignee in bankruptcy the property and effects of the debtor to be administered in this court.

That may be a question to be considered ·by the creditors and the court hereafter.

Let the adjudication be made.